No. 28,096.

WILLIAM FROWE, *Appellee,* v. L. E. McPHEETERS, J. H. HOLKE, J. D. McNEILL et al., *Appellants.*

(270 Pac. 580.)

Opinion filed October 6, 1928.

*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellants.
*J. B. Wilson* and *E. H. Beck,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by a seller to recover money alleged to have been fraudulently withheld by his agents, the defendants, in a land deal. Plaintiff prevailed and defendants appeal.

The case was here before on the pleadings. (*Frowe v. McPheeters,* 122 Kan. 420, 251 Pac. 1105.) The petition alleging the facts was duly considered. However, at the risk of some repetition, the facts may be stated substantially as follows: Plaintiff, owner of a forty-acre farm in Douglas county, left Kansas in December, 1922, and went to Florida. In September, 1924, while in Kansas on a visit he listed the land through McPheeters with the Mansfield Land and Loan Company, of Lawrence. Plaintiff and McPheeters had been acquainted several years. There was evidence indicating that the firm consisted of Mr. Mansfield and O. J. Bunn. Others, including defendants, were employed in the office on a commission basis. On April 14, 1925, the plaintiff in Florida, received what purported to be a telegram signed by McPheeters, stating that he had an offer of $8,500 for the farm. Plaintiff replied accepting the offer on the condition that some changes be made in regard to rental of the property. He was subsequently notified by letter that one H. S. Taylor was the purchaser. On April 17, following, he received a letter from the Mansfield Investment Company, signed by Bunn, stating that contracts were inclosed for signatures of himself and wife, it having already been signed by Taylor, and a deed with grantee in blank.

It appears that the farm had actually been sold on April 13, 1925, to Martin Miller, for a consideration of $10,500. On May 11, 1925, the Mansfield Company sold out to McPheeters and Holke. The plaintiff first learned that defendants had sold the land for a larger price than he received ($8,500) in the latter part of August, 1925. He authorized his attorney to demand the $2,000 difference, payment of which was refused.

On the trial the court sustained a demurrer to the evidence on behalf of the defendants Hilleary and Holke, but overruled it as to McPheeters and McNeill. From this ruling plaintiff has filed a cross appeal.

Plaintiff contends that the defendants used H. S. Taylor in the deal as a straw man, drew up a contract, sent it to plaintiff, representing that the land was being sold to Taylor, asking plaintiff to sign a deed with blank grantee, when in truth and in fact, Martin Miller was the purchaser and Taylor was not. The principal question presented relates to the admissibility of a telegram received in Florida by plaintiff, purporting to have been sent by McPheeters,

concerning the offer of $8,500 for the land, which plaintiff believed was the best offer obtainable. The telegram in question reads:

"LAWRENCE, KAS., 11:20 a. m., April 14, 1925.

*"Wm. Frowe, R. F. D. No. 1, Ft. Pierce, Fla.:*

"I am offered eight thousand five hundred dollars for your forty acres stop terms three hundred dollars down held in escroe balance all cash june first stop sold subject to this years lease buyer to 'get rent stop my advice to you take this deal wire me at once. . L. E. McPHEETERS."

130P.

It appears that a considerable part of the trial of the case was consumed in argument as to the admissibility of this telegram. Trial of the case began May 23, 1927. The manager of the Western Union Telegraph Company, having been placed on the stand, testified that messages were kept by the company for a period of twelve months, but that the messages sent through the office in April, 1925, had been destroyed. The employees of the telegraph company had no personal recollection of McPheeters having sent the wire. It was, however, shown by the plaintiff that upon receipt of the purported wire from McPheeters, an answer was made; that other correspondence ensued which eventually resulted in the transfer of the land to Miller for the purported price of $8,500. It was also shown that as a matter of fact the land had been sold to Miller for a consideration of $10,500. An analysis of the testimony here would serve no useful purpose. It must have been apparent to the trial court and is perfectly apparent from the record before us that the defendant McPheeters either personally sent the telegram or authorized it to be sent and that the plaintiff sold the land as a result of its contents. The trial court exercised care in the admission of the testimony and in every way preserved the rights of the defendants, and no error was committed in receiving in evidence and considering the telegram in question. The judgment which followed was only the natural result following the establishment of the facts.

On the question of the demurrer, we are of opinion the trial court was overcareful. There was evidence tending to show that Hilleary and Holke were active in the transaction and received their portion of the profits. Undoubtedly they were partners in the transaction and plaintiff was entitled to have his case against them submitted to the jury.

In *Boston Foundry Company v. Whiteman,* 31 R. I. 88, 22 Ann. Cas. 1334, it was held that the members of a partnership are liable for a fraud committed by one of the partners in the ordinary conduct of the firm's business, although the others do not participate in and have no knowledge of the fraud.

In the opinion it was said:

"By the great weight of authority it is well settled that all the members of a firm are liable for fraud committed by one of them in the ordinary conduct of the firm's business, although the others do not participate in the fraud and have no knowledge of it." (p. 94.)

In the opinion when the case was first here, it was said:

"Plaintiff had land which he desired to sell. Defendants were real-estate brokers who desired and invited authority to act for plaintiff in conducting a sale of his land. Representations were made to him concerning the price at which his land could be sold and of a prospective purchaser. Plaintiff knowing nothing as to the truth of the representations accepted their tender of services and authorized them to act for him. They conducted the negotiations, effected a sale and accounted to him by remitting what they said were the proceeds of the sale. Thus it appears that the defendants were authorized to bring about a business relation between the plaintiff and a third person which in a legal sense constitutes a distinctive characteristic of agency." (*Frowe v. McPheeters,* 122 Kan. 420, 422, 251 Pac. 1105.)

Numerous alleged trial errors, including the overruling of a motion to make the petition more definite and certain, in overruling a motion to strike, the admission of evidence, overruling a demurrer to plaintiff's evidence, refusal to withdraw an exhibit, instructions given and instructions changed, denying defendant's motion for judgment on the special findings, and in denying motions for new trial, have all been considered but cannot be sustained.

The judgment as to McPheeters and McNeill is affirmed. As to Hilleary and Holke, it is reversed and remanded with directions to grant a new trial.